UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO ANTHONY,

        Plaintiff,                              No. 18-10064

v.                                         District Judge Laurie J. Michelson
                                             Magistrate Judge R. Steven Whalen

K. SALISBURY, ET AL.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Deangelo Anthony, a *pro se* prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), brings this action under 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments. Before the Court is a motion for summary judgment filed by Defendants Ronald Nichols, Gayline Gibbs, Angela Holman, and Mental Health Services [Doc. #22], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

                              **I.    FACTS**

      Plaintiff initially filed his complaint in the Western District of Michigan. It was transferred to this Court on January 6, 2018. During the time of the events underlying the complaint, Plaintiff was an inmate at the Gus Harrison Correctional Facility in Adrian, Michigan ("ARF"). *Complaint*, Doc. #1, ¶ 4. He states that on April 21, 2014, a fellow inmate he knew as "Boyd" hanged himself. During the ensuing investigation, officers of the Michigan State Police questioned Plaintiff, who expressed his belief that prison correctional officers "allowed [Boyd] to successfully commit suicide due to conflict

between himself and the officers." *Id*. ¶¶ 12-13. Plaintiff alleges that during the first week of May, Defendant Salisbury told him to stop lying about Boyd's death, or he would be transferred back to a security level V institution. *Id*. ¶ 14. Plaintiff continued to contact Boyd's mother to express his belief about the true circumstances of her son's death. *Id*. ¶ 16. He also "informed MHS employee A. Holman about Inspector K. Salisbury's harassment," and filed a grievance concerning Salisbury's harassment and threats. *Id*. ¶¶ 16-17. According to Plaintiff, Holman told him that Salisbury suspected Plaintiff of being part of a Security Threat Group and of dealing in unauthorized store goods, and she said this was the reason that Salisbury was harassing him. *Id*. ¶ 19.

Plaintiff states that on November 13, 2014, Salisbury issued him a Class I misconduct ticket for allegedly threatening to beat and sexually assault a female staff member. *Id*. ¶ 23. He alleges that Defendant Nichols interviewed him concerning the charge, and when Plaintiff inquired about the basis of the charge, Nichols allegedly replied, "The next time someone commits suicide in his housing unit...he should think twice before putting his name in other people's business." *Id*. ¶¶ 24-25. On November 21, 2014, Plaintiff was found not guilty of the misconduct. *Id*. ¶ 32.

Plaintiff states that on November 17, 2014, he overdosed on Tylenol and was taken to an emergency room outside the facility. He "fell into a major deep depression" and was placed on observation. *Id*. ¶¶ 27-28. He alleges that on November 18, 2014, he was transferred without a psychological evaluation and placed in a holding cell in the ARF Annex, where he attempted suicide. *Id*. ¶ 29. He states that an unidentified Transfer Coordinator "did not inform mental health services and staff transferred Plaintiff in his fragile mental condition." He was transferred to the Marquette Branch Prison, where he was placed under observation. *Id*. ¶¶ 30-31.

Plaintiff brings a claim of First Amendment retaliation and an Eighth Amendment claim of cruel and unusual punishment against Defendants Salisbury and Nichols. He alleges that as a result of Nichols' retaliation, he was charged with a misconduct and not properly investigated under MDOC policy. *Id*. ¶¶ 33-36.

Plaintiff claims deliberate indifference to his mental health needs, in violation of the Eighth Amendment, against Defendants Holman and Mental Health Services ("MHS"), alleging the failure of its providers "to take steps to ensure that Plaintiff received the needed treatment." *Id*. ¶¶ 37-41. He also claims that MHS violated MDOC policies regarding mental health treatment. *Id*. ¶¶ 42-43.

Plaintiff brings a Fourteenth Amendment Equal Protection claim against Defendants Nichols and Gibbs. He alleges that Nichols failed to "properly investigate the allegations such as a plot to "beat and rape white female staff" before issuing the misconduct ticket. *Id*. ¶ 45. He alleges that Gibbs failed "to act on her knowledge of violation of equal protection" regarding racial discrimination, as a result of which he was removed from the residential treatment program at ARF and transferred to a higher security institution. *Id*. ¶¶ 47-48.

Submitted with Defendants' motion [Doc. #22] as Exhibit G is the affidavit of Defendant Ronald Nichols, who affirms that he is an Assistant Resident Unit Supervisor at ARF. *Nichols Affidavit*, ¶ 2. He denies telling Plaintiff, allegedly in response to Plaintiff's statements to the police about Boyd's suicide, that "he should think twice before putting his nose in other people's business." *Id*. ¶ 4. Nichols denies retaliating against Plaintiff for having talked to the police or having filed a grievance, and has no knowledge or recollection of any grievances that Plaintiff may have filed. He states that pursuant to MDOC Policy Directives, grievances are not placed in prisoner files, and he

does not have access to those documents. *Id*. ¶ 5.

Nichols states that he was not involved in the decision to discharge Plaintiff from the residential treatment program at ARF, and that it was the mental health team that would have made that decision. *Id*. ¶ 6. Nichols also states that he does not have the authority to transfer an inmate to another facility. *Id*. ¶ 7. In explanation of why Plaintiff was initially transferred to ARF from Marquette, and then transferred back, Nichols offers the following: In April of 2014, Plaintiff, whose true security level is Level V, was sent from Marquette (a higher security facility) to ARF (a lower security facility) to allow him to participate in a residential treatment program ("RTP") that was available at ARF but not at Marquette. Plaintiff completed the program in November of 2014 and was then transferred back to Marquette to make room for other lower security prisoners, and because Marquette accommodated his true security level. In September of 2015, Plaintiff was again transferred to ARF for additional RTP treatment, and when he completed that treatment in December, he was transferred back to Marquette. *Id*. ¶¶ 7-9.

Nichols states that he has no recollection of reviewing any misconduct allegations against the Plaintiff, and that the prisons Hearing Investigator, not an ARUS, would investigate misconduct allegations. An ARUS would not be involved in the hearing process. *Id*. ¶ 10.

Nichols' affidavit refers to Exhibits E and F of Defendants' motion. Exhibit F consists of two transfer orders from ARF to Marquette, one from November, 2014, and the other from December, 2015. Both reflect that Plaintiff has a high risk level classification for both property and violence, and both indicate a designated custody level of V. In the "comments" section, the 2014 transfer order states, "Prisoner has been discharged from RTP, return to true security level and sending facility." The 2015 order

states, "Prisoner has discharged from RTP transferring to level V facility, ARF cannot accommodate security needs." Exhibit E is Plaintiff's lockup history at the MDOC. It indicates that from April to December of 2014 and from September to December of 2015, Plaintiff was temporarily transferred from Marquette (a level V facility) to ARF (a level IV facility) for participation in the Residential Treatment Program, and then returned to Marquette.

Exhibit H of Defendants' motion is the affidavit of Gayline Gibbs, an Assistant Resident Unit Supervisor at ARF. Like Nichols, she states that not only did she not retaliate against Plaintiff for filing grievances, but grievances are not placed in the prisoners' files, and she was unaware that Plaintiff had even filed grievances. *Gibbs Affidavit*, ¶ 5, citing MDOC Policy Directive 03.02.130, ¶ J. Gibbs states that she had no role in the decision to transfer Plaintiff to Marquette or to discharge him from the Residential Treatment Program, and does not have the authority to transfer an inmate. *Id*. ¶¶ 6-7. She states that she did not review any misconduct allegations against the Plaintiff, and that an ARUS would not be involved in the misconduct hearing process. *Id*. ¶ 10.

Exhibit I to Defendants' motion is the affidavit of Angela Holman, who was a clinical social worker at ARF at the time of the events alleged in the complaint. *Holman Affidavit*, ¶ 2. She states that she has no recollection of Plaintiff telling her that Defendant Salisbury was harassing him, and that there is no documentation supporting Plaintiff's assertion. *Id*. ¶ 4. She has no knowledge about investigations related to Security Threat Groups, and such information is outside the scope of her duties and responsibilities. *Id*. ¶ 5. Gibbs states that after Plaintiff completed the RTP, his treatment was completed at the outpatient level. She notes that the electronic records indicate that

Plaintiff was evaluated before being removed from RTP. *Id.* ¶ 7. She states, "Anthony's discharge reflect that he had progressed to the point where he demonstrated independent functioning," and that "the treatment team believed that he had reached the maximum benefit of residential treatment programming." *Id*. Holman states at ¶ 8 that "Anthony's electronic medical records indicate that at no time was he discharged entirely from mental health services. Moving levels of care is not a discontinuation of services." *Id*. ¶ 9. Finally, Holman states that it is not within the scope of her practice , and it is outside of her job duties, to investigate or correct misconduct allegations. *Id*. ¶ 10.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Exhaustion

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." (Emphasis added). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner

grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008). *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints. This grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

Defendants have submitted information showing that Plaintiff filed at least five grievances naming, among others, Nichols, Gibbs, and Holman, and that Plaintiff pursued these grievances through Step III.[1] However, Defendants argue that Plaintiff did not

---

[1] *See Defendants' Motion*, Exhibit 3.

*properly* exhaust because the grievances were rejected as untimely, specifically because Plaintiff missed the five-day deadline for filing at Step I. In response, Plaintiff points out that he was suffering from mental health issues, was taking psychotropic medication, and was at one point, following a suicide attempt, placed in observation, rendering him effectively incommunicado and unable to file a grievance.

Again, it is Defendants' burden to show that Plaintiff failed to timely pursue *available* administrative remedies. In *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625–26 (6th Cir. 2011), the Sixth Circuit recognized that a prisoner's mental state could impede his ability to pursue administrative remedies to the extent that those remedies would effectively be "unavailable" to him. Given Braswell's impaired mental state, the Court found that he had "raised a genuine issue of material fact" as to whether the defendant had met its burden of showing non-exhaustion. *Id*. In so doing, the Sixth Circuit extended the holding in *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003), which found that administrative remedies could be deemed unavailable because of a physical injury (i.e., a broken arm), to mental or psychiatric limitations. *Braswell* also cited *Johnson-Ester v. Elyea*, 2009 WL 632250, at *6 (N.D. Ill. Mar. 9, 2009), where the Court stated that it saw "no reason not to consider, as part of a 'discriminating analysis,' both physical and mental infirmities as possible reasons that generally available administrative remedies might be 'unavailable' in a particular instance."

This Court has reviewed countless summary judgment or dismissal motions based on exhaustion, and most common scenarios are where there is no completion of the process through Step III, no naming of a particular defendant, or no grievances filed at all. In this case, we have only an alleged failure to file the grievances timely at Step I. However, Plaintiff, who has clearly diagnosed psychiatric problems, and was at ARF

specifically for the purpose of in-patient mental health treatment, has, like the plaintiff in *Braswell*, "raised a genuine issue of material fact" sufficient to defeat Defendants' summary judgment motion insofar as it is based on exhaustion.

Unfortunately for Plaintiff, this will seem a pyrrhic victory, since, as discussed in the following sections, summary judgment must be granted on the merits.

### B.  First Amendment Retaliation

Plaintiff brings a claim of First Amendment retaliation and an Eighth Amendment claim of cruel and unusual punishment against Defendants.[2]

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

For purposes of this motion, I will assume that Plaintiff has satisfied the first two elements, that is, speaking to the State Police about Boyd's death was protected conduct, and transfer from a Level IV to a Level V institution could be considered an adverse action. Nevertheless, his claims falter on the third prong, because he has shown nothing,

---

[2] Defendants Gibbs and Holman are specifically named in the Equal Protection and Eighth Amendment deliberate indifference counts respectively, not in the retaliation count. However, in his response [Doc. #30], Plaintiff suggests that these two Defendants were a necessary part of a retaliatory conspiracy with Salisbury and Nichols to increase his security level, and thereby to cause his transfer to Marquette. While a plaintiff cannot amend a complaint by adding claims via a response to a dispositive motion, I will liberally construe his original *pro se* complaint as having raised a retaliation claim against Gibbs and Holman. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

beyond speculation and conjecture, that there is a causal connection between those two events. The undisputed facts show that neither Nichols, Gibbs, Holman, nor MHS had any personal involvement in Plaintiff's transfer back to Marquette after he completed the RTC program, and that he was sent back to Marquette because he completed the residential mental health program at ARF, and was therefore required to be returned to an institution that could accommodate his actual security classification.

First, the plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir. 1984). Mere failure to act does not amount to personal involvement. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)); *Bellamy* at 421 (at a minimum, a §1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)( (supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

Nichols, Gibbs, and Holman have all submitted affidavits stating that they had no authority to effect an prisoner's transfer, and that neither an ARUS (Nichols and Gibbs) nor a mental health specialist (Holman) is tasked with investigating or deciding a misconduct charge. In his response, Plaintiff counters with what can best be described as a conspiracy theory. He posits that "Defendants Salisbury and Nichols wanted to teach Prisoner Anthony a lesson about sticking his nose in their business," and they "concocted

a way to kick Plaintiff out of the mental health program and transfer him to a higher security level." *Response* [Doc. #30], Pg. ID 244. This was accomplished, he claims, by giving him a false misconduct ticket that would increase his security classification level and result in an immediate transfer. *Id.*, Pg. ID 245. While Plaintiff does not dispute that ARUS Gibbs does not have the authority to transfer him, he argues that she nevertheless has the authority "to raise Plaintiff's custody back to level V and reclassify him for transfer." *Id.* Finally, in term the involvement of the mental health providers, he argues that Salisbury and Nichols needed the cooperation of MHS and Holman to cover up his retaliatory transfer, and that "[t]his had to be a joint effort." *Id.* Pg. ID 248.

However, Plaintiff has offered no facts to support this theory. There are no facts to show that Gibbs raised his security level or that his mental health providers were complicit in a scheme to do so. There is no independent evidence that Nichols played any role in the disciplinary investigation or hearing. Plaintiff's claims are purely speculative.

More importantly, the Defendants have presented a wealth of unrebutted evidence that Plaintiff was transferred from ARF back to Marquette for completely non-retaliatory reasons. Defendants' Exhibits E and F show that Plaintiff's true security level was always V, and that he was *temporarily* reclassified to level IV only so that he could receive inpatient mental health treatment at ARF, a level IV facility. The RTP was not available at Marquette, a level V facility. Plaintiff concedes that his custody level V was waived to level IV "to allow him to receive treatment at the Gus Harrison Facility." *Plaintiff's Response*, Pg. ID 245. Defendants' Exhibit F, the transfer orders from November 2014 and December 2015 corroborate the Defendants' affidavits, and clearly indicate that Plaintiff was transferred back to Marquette because he had completed the RTP program and was being returned to an institution consistent with his true security level. Moreover,

Plaintiff's theory that the misconduct ticket was used to increase his security level is a red herring: he was in fact found not guilty of that charge.

In short, no trier of fact could reasonably find a causal relationship between Plaintiff's protected activity and his re-classification to security level V or his transfer back to the Marquette facility. These Defendants are entitled to summary judgment on the retaliation claim.

### C. Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id*. at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'suff Under the Eighth Amendment, prisoners have a constitutional right to medical care. iciently serious.' " *Id*. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*.

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106; *Comstock*, 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999),

citing *Estelle v. Gamble* ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Plaintiff's claim that Defendants Holman and MHS failed "to take steps to ensure that Plaintiff received the needed treatment," or to evaluate him or provide follow-up treatment, *Complaint* ¶¶ 37-41, is contradicted by the record. In 2014 and 2015, he was transferred to ARF specifically so that he could receive inpatient treatment, and each time was discharged based on the evaluation of mental health professionals. Defendant Holman states in her affidavit, at ¶ 7, "Anthony's discharge reflect that he had progressed to the point where he demonstrated independent functioning," and "the treatment team believed that he had reached the maximum benefit of residential treatment programming." Holman further states that discharge from RTP does not mean cessation of treatment, and that "Anthony's electronic medical records indicate that at no time was he discharged entirely from mental health services. Moving levels of care is not a discontinuation of services." Id. ¶ 9. Plaintiff acknowledges that when he overdosed on Tylenol he was taken to an emergency room and subsequently placed under observation, and outpatient treatment was continued when he was returned to Marquette. In his response, Plaintiff argues that the MHS staff at ARF wrongly concluded that he was capable of "independent functioning" and wrongly discharged him from the RTP. *Response* [Doc. #30], Pg. ID 252. This demonstrates nothing more than his disagreement with a diagnosis, prognosis, or level of care, which does not support an Eighth Amendment claim. *See Jennings v. Al-Dabagh*, 275 F.Supp.2d 863, 870 (E.D. Mich. 2003)("[T]he fact that a prisoner disagrees with a course of treatment that he was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation.").

This Court is ill-equipped to second-guess judgments of the ARF mental health

professionals. Again, even misdiagnosis and improper or ineffectual treatment do not rise to the heightened standard of deliberate indifference under the Eighth Amendment and even gross negligence is not tantamount to deliberate indifference. See *Broyles v. Corr. Medical Servs., Inc.*, 478 Fed.Appx. 971, 975 (6th Cir. 2012). These Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim.

### D.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV § 1. "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005); *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id*.; *Vacco*, at 521 U.S. at 799. In order to survive summary judgment, a claimant must present evidence that he was "denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999). Further, "a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Id*.

Plaintiff's equal protection claim appears to be based on the theory that Defendants Nichols failed to properly investigate allegations concerning a plot to "beat and rape white female staff," and that Defendant Gibbs failed "to act on her knowledge" of an equal protection violation. *Complaint*, ¶¶ 45-47. "To state an equal protection claim, a

plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.' " *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir.2006)). Here, the fact that the target of an alleged assault was of a different race than the accused does not show disparate treatment, and there is no evidence that Plaintiff was charged with misconduct or treated differently based on his race. Moreover, "[p]risoner security classifications are not a suspect class," *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997), and placement in a higher security institution does not burden a fundamental right. *See Caderno v. Thoms*, 50 Fed.Appx. 200, 201, 2002 WL 31420100, *1 (6th Cir.2002) ("Inmates have no right to be housed in a particular institution or a particular part of an institution") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Summary judgment should be granted as to the Equal Protection claim.

## IV. CONCLUSION

I recommend that Defendants' motion for summary judgment [Doc. #22] be GRANTED and that Defendants Ronald Nichols, Gayline Gibbs, Angela Holman, and Mental Health Services be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2019

**CERTIFICATE OF SERVICE**

I hereby certify on July 8, 2019, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 8, 2019.

s/Carolyn M. Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen