UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO ANTHONY,

    Plaintiff,

v.

KENNETH SALISBURY, et al.,

    Defendants.

Case No. 18-10064
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [35] GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [22]**

Deangelo Anthony brought an action under 42 U.S.C. § 1983 alleging violations of his First, Eighth, and Fourteenth Amendment rights while in custody of the Michigan Department of Corrections. The Court referred the case to Executive Magistrate Judge R. Steven Whalen for all pretrial matters. Three of the five named individual defendants and Mental Health Services moved for summary judgment. (ECF No. 22.) The Magistrate Judge issued a Report and recommends granting the motion. (ECF No. 35.)

Anthony makes two objections to the Report. (ECF No. 37.)

For the reasons stated below, the Court overrules the objections, adopts the Report and Recommendation, and grants the motion for summary judgment.

**I.**

In April 2014, Deangelo Anthony was transferred from the Marquette Branch Prison (MBP) to the Gus Harrison Correctional Facility in order to participate in a Residential Treatment Program (RTP) for depression and impulse control issues. (*See* ECF No. 30, PageID.293–294.)

In late April, Adkeyda Boyd, another inmate and friend of Anthony's, committed suicide. (ECF No. 30, PageID.285.) Anthony spoke with Boyd's mother and Lenawee County State Police about his belief that prison staff harassed and coaxed Boyd into suicide. (ECF No. 30, PageID.285.)

Anthony avers that, after talking with police and Boyd's mother, Assistant Resident Unit Supervisor Kenneth Salisbury began harassing him and threatening to transfer him back to a Level V facility (the security-level prison he was assigned to prior to being transferred for the RTP) if he kept talking with Boyd's mother. (ECF No. 30, PageID.285–286.) Anthony filed a grievance based on the threats. (ECF No. 30, PageID.286.)

On November 14, 2014, Salisbury issued a misconduct ticket accusing Anthony and Larry Hibler, another inmate, of planning to beat and sexually assault a female prison staff member. (ECF No. 30, PageID.302.)

Hibler states that the day before the report was submitted, he overheard Assistant Resident Unit Supervisor Ronald Nichols say to Anthony, "you will learn your lesson about sticking your nose into my business." (ECF No. 30, PageID.282.) Hibler further avers that, the next day, Michele Ford, a mental health professional, came to Hibler's cell and told him, "don't worry, nothing will happen to you, they just want to get rid of Anthony." (ECF No. 30, PageID.283.)

Anthony asserts that the misconduct allegation automatically raised his security level and kicked him out of the RTP. (ECF No. 30, PageID.237.)

The day after the misconduct report was submitted, Anthony overdosed on pills. (ECF No. 30, PageID.287.) He was taken to a hospital and then placed in observation. (ECF No. 30, PageID.287.) On November 18, 2014, Anthony states that he was removed from observation and taken to the Gus Harrison "annex" where he became scared and paranoid that staff were going to

try to kill him, so he tried to hang himself. (ECF No. 30, PageID.287.) He was then immediately transferred back to the Marquette Branch Prison. (ECF No. 30, PageID.187.)

Anthony was placed on observation after arriving in Marquette. (ECF No. 30, PageID.288.)

Anthony was found "not guilty" of the charge after a misconduct hearing on November 21, 2014. (ECF No. 30, PageID.303.)

Anthony now sues various staff at the Gus Harrison facility as well as Mental Health Services, a private entity under contract with the Michigan Department of Corrections to provide mental health care to inmates. He alleges that his security level was raised from four to five in order to kick him out of the RTP and send him back to Marquette in retaliation for speaking to the police about Boyd's death, in violation of his First Amendment rights. He also alleges that his Eighth Amendment rights were violated based on his removal from the RTP as well as allegedly not being evaluated prior to his removal from observation. Lastly, he alleges that, because of his race, Salisbury's misconduct allegation was not property investigated, in violation of the Equal Protection Clause.

Staff members Nichols, Gibbs, and Holman and Mental Health Services move for summary judgment. (ECF No. 22.) The Magistrate Judge believes the motion should be granted on all claims.

Anthony makes two objections: one regarding his retaliation claim and one regarding his Eighth Amendment claim that Holman and Mental Health Services were deliberately indifferent to his serious medical needs by discharging him from the RTP.

**II.**

This Court performs a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which the parties have objected. *See* 28 U.S.C. § 636(b). The Court need

not and does not perform a *de novo* review of the report's unobjected-to findings. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

### III.

### A.

Anthony first objects to the Magistrate Judge's conclusion that he failed to demonstrate that he was transferred from a Level IV institution—where he was in the RTP—to a Level V institution in retaliation for speaking to the Michigan State Police.

"To establish a claim of First Amendment retaliation, a plaintiff shows that: '(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)). "Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378,

399 (6th Cir. 1999)). The burden then shifts to the defendant, and "'[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id.* at 267 (quoting *Thaddeus-X*, 175 F.3d at 399).

The Magistrate Judge found that Anthony failed to point to anything "beyond speculation and conjecture" to support a causal connection between Anthony's protected speech and the transfer. The Magistrate Judge further found that Anthony produced nothing to show that the moving defendants were personally involved in his transfer. (See ECF No. 35, PageID.400–403.)

Anthony argues that an issue of material fact remains as to whether his speech motivated the transfer. His objection focuses solely on Gibbs. Anthony argues that "[i]n order for Salisbury and Nichols to carry out their retaliatory scheme to raise Plaintiff's Security Level using the false misconduct, they'd have to require the assistance of the one person in charge of the screening and reclassification, Gibbs. Both [Salisbury and Nichols] needed Gibbs to use the misconduct report to raise Plaintiff's custody level back to V, and reclassify him for transfer." (ECF No. 30, PageID.248.)

In support, Anthony points to the security classification screen review from November 6, 2014; Gibbs is the listed screener. (ECF No. 37, PageID.425.) This form, argues Anthony, shows both that Gibbs was personally involved in the transfer and that the transfer was motivated by his speech.[1]

Anthony also directs the Court to *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). In that case, a warden testified that a transfer order "would be prepared at or about the same time as

---

[1] Anthony also attaches an affidavit by Dylan Radke, who was an inmate at Gus Harrison at that time. But this affidavit was not attached to his response to the summary judgment motion and was therefore not before the Magistrate Judge. (*See* ECF No. 30.) So the Court cannot now use it in reviewing Anthony's objections. *See McNelis v. Comm'r of Soc. Sec.*, No. 08-12529, 2011 WL 743393, at *2 (E.D. Mich. Feb. 23, 2011).

the transfer screen and by the same person." 412 F.3d at 698. The warden further testified that a resident unit manager "would normally prepare a transfer screen only after the transfer coordinator informed him that another facility requested a transfer" and that "[a]lthough the transfer coordinator has ultimate authority to approve the transfer, if the selected inmates meet the transfer requirements, the transfer coordinator will not request different prisoners to trade." *Id*. The court concluded that a genuine issue of material fact remained in Sigger-El's First Amendment retaliation claim because Barlow, the resident unit manager, filled out the transfer screen prior to a request for a transfer, thereby evidencing that it was Barlow who selected Siggers-El for the transfer. *Id*.

Anthony tries to draw a parallel to his case. He argues that, because Gibbs filled out the transfer screen prior to the transfer order, he was transferred because Gibbs raised his security level to V and not because he was discharged from the RTP.

But neither the transfer form nor *Siggers-El* create a genuine issue of material fact for trial.

First, and most significantly, the screening form does not support Anthony's theory. The misconduct allegation was made on November 13, 2014 regarding an incident on November 11, 2014. (ECF No. 30, PageID.286, 302.) But Gibbs filled out Anthony's security classification screen on November 6, 2014. (ECF No. 37, PageID.425.) So Gibbs could not have used the misconduct allegation as a basis for raising Anthony's security level. And the transfer order does not even mention the misconduct allegation. Under "last major misconduct," D. Simmons, who prepared the form, mentioned an unrelated misconduct from June 2014. (ECF No. 37, PageID.427.)

Second, in *Siggers-El*, Barlow did not make the decision that a transfer occur, he just made sure that when the next request for a trade came in, the inmate traded would be Siggers-El. This is

6

not what Anthony alleges happened here. Anthony alleges that Gibbs prompted the transfer by using the misconduct violation as a basis for raising his security level back to V, thus prompting his transfer back to Marquette. But Anthony has not produced anything to demonstrate that Gibbs had the power to prompt Anthony's transfer. Instead, as indicated on the transfer order, that reason was Anthony's discharge from the RTP. Further, while the warden in *Siggers-El* testified that the person who filled out the security screen would also prepare the transfer order, 412 F.3d at 698, that does not appear to be the case here. While Gibbs prepared the screen form, a person named "D. Simmons" filled out the actual transfer order. (ECF No. 37, PageID.427.)

Anthony's first objection is overruled.

**B.**

Anthony also objects to the Magistrate Judge's recommendation to grant the moving defendants summary judgment on his Eighth Amendment claim. He argues that the decision to remove him from the RTP was counter to his own treatment plan and thus violated the Eighth Amendment.

An Eighth Amendment claim on these grounds consists of an objective and subjective component. *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018). The objective component requires the plaintiff to show that his medical issue was "sufficiently serious." *Id*. at 938 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The defendants concede for the purposes of this motion that Anthony has satisfied this requirement. The subjective component requires the plaintiff to show that the official "kn[ew of] and disregard[ed] an excessive risk to [the inmate's] health or safety." *Id*. at 939 (citing *Farmer*, 511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (internal quotation omitted).

7

Anthony argues that Holman, the Community Health Services Manager and a clinical social worker, did not comply with his treatment plan when she discharged him from the RTP. (ECF No. 30, PageID.290–291.) In that plan, it states that Anthony will be "considered for discharge/transfer from the RTP program" "when [Anthony] has remained psychiatrically stable for a minimum of 30 days." (ECF No. 30, PageID.291.) Anthony argues that he did not meet this criterion at the time of his discharge from the RTP because he was on suicide watch at the time after consuming 60-70 pills. (ECF NO. 37, PageID.417.) Thus, argues Anthony, Holman was deliberately indifferent to his serious medical needs by discharging him from the program.

"Failure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Richmond*, 885 F.3d at 938. "However, this Court 'distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment,' such that where medical care is merely inadequate, this Court is 'generally reluctant to second guess medical judgments.'" *Id*. (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). "Nevertheless, treatment may be constitutionally impermissible when it is 'so woefully inadequate as to amount to no treatment at all.'" *Id*. (quoting *Alspaugh*, 643 F.3d at 162).

Here, all evidence indicates that Anthony was evaluated prior to being discharged from RTP and was not denied care after leaving the RTP. Holman avers that Anthony's "electronic medical records show that evaluations were completed before he was discharged from RTP" and "Anthony's discharge records reflect that he had progressed to the point where he demonstrated independent functioning." (ECF No. 22-10, PageID.205.) She further explains that "[t]he treating team determines when a prisoner is appropriate for a lower level of care based on his progress and collective clinical judgment. In Anthony's case, the treating team believed that he had reached the

8

maximum benefit of residential treatment programming." (ECF No. 22-10, PageID.205–206.) Also, "Anthony's electronic medical records indicate that at no time was he discharged from mental health services. Moving levels of care is not a discontinuation of services." (ECF No. 22-10, PageID.206.) According to Holman, after Anthony completed the RTP, his treatment continued at the outpatient level of care which provides psychiatric services to general population prisoners who have a serious mental illness or disability. (ECF No. 22-10, PageID.205.) This is consistent with the lockup records Defendants attach to their motion, which Anthony does not appear to dispute. (ECF No. 22-6.) These records show that, after Anthony was transferred back to Marquette, he was placed in an outpatient treatment program and was transferred to an RTP on at least two more occasions. (*See id.*)

Anthony has not produced any evidence to rebut Holman's assertions and his lockup records or suggest that the treatment he received after leaving the RTP was "so woefully inadequate as to amount to no treatment at all." *Alspaugh*, 643 F.3d at 162.

So, while the Court certainly questions the wisdom of removing an inmate from a treatment program just after he attempted suicide, the record suggests that alternate care was provided and the law cautions against the Court second guessing these treatment decisions. Thus, the Court does not find any error in the Magistrate Judge's conclusion that the decision to change Anthony's treatment from the RTP to outpatient level care at another facility amounted to an Eighth Amendment violation.

Further, because Anthony also sues Mental Health Services, he must show that it has a "corporate policy, practice, or custom that cause[d] [his] injury." *Baker v. Stevenson*, 605 F. App'x 514, 520 (6th Cir. 2015) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). Yet

Anthony does not explain how the decision to discharge him was pursuant to any MHS policy, practice, or custom. So MHS is entitled to summary judgment.

Anthony's second objection is overruled.

## IV.

For the reasons stated, Anthony's objections are OVERRULED, and the Court ADOPTS the Magistrate Judge's Report GRANTING Nichols, Gibbs, Holman and Mental Health Services' motion for summary judgment (ECF No. 22).

IT IS SO ORDERED.

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

Date: August 16, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 16, 2019.

                                              s/William Barkholz
                                              Case Manager to
                                              Honorable Laurie J. Michelson