UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO ANTHONY,

      Plaintiff,

v.

Case No. 2:18-cv-10064
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

KENNETH SALISBURY and MICHELE
FORDE,

      Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 57)[1]

### I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. In January of 2018, plaintiff Deangelo Anthony, proceeding *pro se* and *in forma pauperis*, filed a complaint naming Kenneth Salisbury, Ronald Nichols, Gayline Gibbs, Mental Health Services (MHS), Angela Holman, and Michele Forde as defendants. All of the defendants, except for Salisbury and Forde, were later dismissed. *See* ECF No. 39.

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 48).  Before the Court is Forde and Salisbury's motion for summary judgment.  (ECF No. 57).  Anthony responded and Forde and Salisbury replied.  (ECF Nos. 59, 60).  As such, the motion is ready for consideration.  For the reasons that follow, the undersigned RECOMMENDS that Forde and Salisbury's motion for summary judgment be GRANTED and the case be DISMISSED.

## II. Background

Anthony filed this action against defendants alleging retaliation, deliberate indifference to his mental health needs, violation of the equal protection clause, and cruel and unusual punishment.  (ECF No. 1, PageID.8-10).

The material facts as gleaned from the record follow.

In April of 2014, Anthony was transferred from Marquette Branch Prison to the Gus Harrison Correctional Facility (ARF) to take place in residential treatment programming that was not offered at Marquette Branch Prison.  *See* ECF No 22-6, PageID.183-184; ECF No. 22-7, PageID.189; ECF No. 22-8, PageID.193-194.  On April 21, 2014, an inmate, Adkeyda Boyd, was found dead by hanging in housing unit four.  (ECF No. 1, PageID.6; ECF No. 59, PageID.535).  Because of an association between Anthony and Boyd, the Michigan State Police (MSP) questioned Anthony about Boyd's death.  (ECF No. 1, PageID.6; ECF No. 59,

2

PageID.535).  Anthony told the MSP that he did not believe Boyd's death to be a suicide.  (ECF No. 1, PageID.6).  Boyd had complained of harassment by housing unit four officers and stated that he hoped to be transferred to a different facility. (*Id*.).  Anthony believed "that the Unit #4 officers allowed him to successfully commit suicide due to conflict between himself and the officers."  (*Id*.).

During the first week of May, Salisbury approached Anthony and told him to stop lying about Boyd's death.  (*Id*.).  Salisbury threatened that Anthony would be transferred to a maximum-security Level V prison if he continued to lie about the death.  (*Id*.).  Anthony informed an MHS employee, Holman, about Salisbury's comments.  (*Id*.).  Holman informed Anthony that Salisbury suspected he was part of a security threat group (STG) that was "running unauthorized store goods" and that was the reason for Salisbury's "harassment."  (*Id*., PageID.6-7).  Holman does not recall having such a conversation with Anthony.  (ECF No. 22-10, PageID.204-205).

Salisbury "continuously harassed" Anthony.  (ECF No.1, PageID.7). Anthony was subjected to numerous cell searches and "was written a contraband removal misconduct for alleged STG material."  (*Id*.).  On November 11, 2014, Salisbury ordered Anthony to be placed under temporary segregation pending an investigation.  (*Id*.).  On November 13, 2014, Salisbury wrote a Class I misconduct ticket that alleged Anthony was part of a plot to beat and sexually assault a female

3

housing staff member.  (*Id*.).  On November 14, 2014, Nichols reviewed the

misconduct with Anthony and told Anthony that " 'he should think twice before

putting his nose in other peoples [sic] business,' " apparently referencing the

investigation into Boyd's death.  (*Id*.).  Nichols denied making such a statement.

(ECF No. 22-8, PageID.192).

Anthony requested to speak to a psychologist.  (ECF No. 1, PageID.7).

Forde then came to speak with Anthony and informed him that Salisbury just

wanted to transfer him to another facility and that Anthony should not worry about

the misconduct ticket.  (*Id*.).

On November 17, 2014, Anthony overdosed on Tylenol and was taken to an

outside emergency room.  (*Id*.).  At some point after the overdose, Anthony was

transferred to Marquette Branch Prison and placed under observation.  (*Id*.,

PageID.7-8).  Nichols stated in his affidavit that this transfer was the result of

Anthony completing his residential treatment programming at ARF.  (ECF No. 22-

8, PageID.194).  On November 21, 2014, Anthony was found not guilty on the

misconduct ticket issued by Salisbury.  (ECF No. 1, PageID.8; ECF No. 59,

PageID.533).

### III. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Anthony is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema,*

*N.A*., 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' "

*Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788

(6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315

(11th Cir. 2004)).

## IV. Analysis

Forde and Salisbury raise four arguments in support of their motion for

summary judgment.  Each will be addressed in turn below.

### A.  Exhaustion

First, Forde and Salisbury argue that Anthony failed to properly exhaust his

administrative remedies as to his claims against them.  (ECF No. 57, PageID.510).

This argument was also raised by the previously dismissed defendants in their

motion for summary judgment.  (ECF No. 22, PageID.75-86).

The magistrate judge to whom the case was originally assigned considered

the issue of whether Anthony properly grieved the issues in this lawsuit in an

earlier report and recommendation.[2]  *Anthony v. Salisbury*, No. 18-10064, 2019

WL 5802690, at *4 (E.D. Mich. July 8, 2019), *report and recommendation*

*adopted*, 2019 WL 3852584 (E.D. Mich. Aug. 16, 2019).  That report and

recommendation addressed the motion for summary judgment filed by three other

---

[2] This case was later reassigned to the undersigned according to Administrative
Order 20-AO-049.

MDOC defendants and MHS.  *Id*. at *1.  Salisbury and Forde appear to raise

identical arguments to those already rejected by this Court.[3]  Accordingly,

Salisbury and Forde's arguments will likewise be rejected.

In the earlier report and recommendation, the magistrate judge explained

that,

> Defendants argue that Plaintiff did not properly exhaust because the
> grievances were rejected as untimely, specifically because Plaintiff
> missed the five-day deadline for filing at Step I.  In response, Plaintiff
> points out that he was suffering from mental health issues, was taking
> psychotropic medication, and was at one point, following a suicide
> attempt, placed in observation, rendering him effectively
> incommunicado and unable to file a grievance.

*Id*. at *4.

The magistrate judge then set forth the law relevant to Anthony's situation.

> Again, it is Defendants' burden to show that Plaintiff failed to timely
> pursue available administrative remedies.  In *Braswell v. Corr. Corp.
> of Am.*, 419 F. App'x 622, 625–26 (6th Cir. 2011), the Sixth Circuit
> recognized that a prisoner's mental state could impede his ability to
> pursue administrative remedies to the extent that those remedies would
> effectively be "unavailable" to him.  Given Braswell's impaired mental
> state, the Court found that he had "raised a genuine issue of material
> fact" as to whether the defendant had met its burden of showing non-
> exhaustion.  *Id*.  In so doing, the Sixth Circuit extended the holding in
> *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003), which found that
> administrative remedies could be deemed unavailable because of a
> physical injury (i.e., a broken arm), to mental or psychiatric limitations.
> *Braswell* also cited *Johnson-Ester v. Elyea*, 2009 WL 632250, at *6
> (N.D. Ill. Mar. 9, 2009), where the Court stated that it saw "no reason

---

[3] In their motion for summary judgment, Salisbury and Forde explain that they are
entitled to summary judgment "[f]or the same reasons as previously set forth. . . ."
(ECF No. 57, PageID.510).

not to consider, as part of a 'discriminating analysis,' both physical and mental infirmities as possible reasons that generally available administrative remedies might be 'unavailable' in a particular instance."

This Court has reviewed countless summary judgment or dismissal motions based on exhaustion, and most common scenarios are where there is no completion of the process through Step III, no naming of a particular defendant, or no grievances filed at all.  In this case, we have only an alleged failure to file the grievances timely at Step I.  However, Plaintiff, who has clearly diagnosed psychiatric problems, and was at ARF specifically for the purpose of in-patient mental health treatment, has, like the plaintiff in Braswell, "raised a genuine issue of material fact" sufficient to defeat Defendants' summary judgment motion insofar as it is based on exhaustion.

*Id*. at *5.

The same result obtains here.  Not only was the report and recommendation adopted by the Court which makes the exhaustion issue the law of the case,[4] the undersigned agrees with its reasoning and conclusion that Salisbury and Forde have not meet their burden to obtain summary judgment on the grounds of exhaustion.

B.  Eleventh Amendment Immunity

Salisbury and Forde next argue that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities

---

[4] "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. U.S.*, 577 U.S. 237, 244-245 (2016) (quotation marks and citations omitted).

because their actions were taken when they were MDOC employees.[5]   (ECF No. 57, PageID.511).

The Eleventh Amendment applies to a suit brought against a state by one of its own citizens.  *Ex Parte Young*, 209 U.S. 123 (1908).  The Eleventh Amendment describes the contours of sovereign immunity, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages."  *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).  Therefore, Salisbury and Forde correctly argue that they are entitled to summary judgment on the grounds of Eleventh Amendment immunity to any claims brought against them in their official capacities.

## C.  Claims Against Salisbury

"Anthony claims that Defendant ARUS Salisbury retaliated by threatening Anthony with phone restrictions, a transfer to a higher security level if he kept talking about Boyd's death, and writing a false misconduct against him, and that

---

[5] In the complaint, Anthony indicates that he is only suing defendants in their individual capacities.  However, for the sake of completeness, the undersigned will address Salisbury and Forde's Eleventh Amendment immunity argument.

Salisbury violated the Eighth Amendment by placing Anthony in segregation, removing him from the residential treatment program, and transferring him to a higher security level."  (ECF No. 57, PageID.511-512).

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech."  *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
> (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured."  *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722).  "The retaliatory motive must be a 'but-for' cause to

the adverse action." *Id.* "The Sixth Circuit has held that 'temporal proximity between the protected conduct and the adverse action by the state actor' may be sufficient evidence of causation." *Coleman*, at *6 (quoting *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010)).

For the purposes of his motion for summary judgment, Salisbury concedes to elements one and two, leaving only element three – causation.  To succeed on element three, Anthony must prove that the adverse actions taken against him were motivated by his protected conduct, here the filing of grievances and talking to the MSP.  Anthony has failed to do so.

In the earlier report and recommendation, the magistrate judge analyzed Anthony's retaliation claim against other defendants regarding the adverse action of Anthony's transfer from a Level IV to a Level V institution (reclassification). He noted that Anthony's "claims falter on the third prong, because he has shown nothing, beyond speculation and conjecture, that there is a causal connection between those two events." *Anthony*, *5.  The magistrate judge explained that

> Nichols, Gibbs, and Holman have all submitted affidavits stating that they had no authority to effect an [sic] prisoner's transfer, and that neither an ARUS (Nichols and Gibbs) nor a mental health specialist (Holman) is tasked with investigating or deciding a misconduct charge. In his response, Plaintiff counters with what can best be described as a conspiracy theory.  He posits that "Defendants Salisbury and Nichols wanted to teach Prisoner Anthony a lesson about sticking his nose in their business," and they "concocted a way to kick Plaintiff out of the mental health program and transfer him to a higher security level." Response [Doc. #30], Pg. ID 244.  This was accomplished, he claims,

11

by giving him a false misconduct ticket that would increase his security classification level and result in an immediate transfer. *Id.*, Pg. ID 245. While Plaintiff does not dispute that ARUS Gibbs does not have the authority to transfer him, he argues that she nevertheless has the authority "to raise Plaintiff's custody back to level V and reclassify him for transfer." *Id.* Finally, in term the involvement of the mental health providers, he argues that Salisbury and Nichols needed the cooperation of MHS and Holman to cover up his retaliatory transfer, and that "[t]his had to be a joint effort." *Id.* Pg. ID 248.

However, Plaintiff has offered no facts to support this theory. There are no facts to show that Gibbs raised his security level or that his mental health providers were complicit in a scheme to do so. There is no independent evidence that Nichols played any role in the disciplinary investigation or hearing. Plaintiff's claims are purely speculative.

More importantly, the Defendants have presented a wealth of unrebutted evidence that Plaintiff was transferred from ARF back to Marquette for completely non-retaliatory reasons. Defendants' Exhibits E and F show that Plaintiff's true security level was always V, and that he was temporarily reclassified to level IV only so that he could receive inpatient mental health treatment at ARF, a level IV facility. The RTP was not available at Marquette, a level V facility. Plaintiff concedes that his custody level V was waived to level IV "to allow him to receive treatment at the Gus Harrison Facility." Plaintiff's Response, Pg. ID 245. Defendants' Exhibit F, the transfer orders from November 2014 and December 2015 corroborate the Defendants' affidavits, and clearly indicate that Plaintiff was transferred back to Marquette because he had completed the RTP program and was being returned to an institution consistent with his true security level. Moreover, Plaintiff's theory that the misconduct ticket was used to increase his security level is a red herring: he was in fact found not guilty of that charge.

In short, no trier of fact could reasonably find a causal relationship between Plaintiff's protected activity and his re-classification to security level V or his transfer back to the Marquette facility. These Defendants are entitled to summary judgment on the retaliation claim.

*Id.* at *6-*7.

12

Anthony has failed to provide evidence as to causation regarding Salisbury. Anthony has failed to prove that Salisbury had the ability to transfer him from ARF to Marquette Branch Prison.  Further, the only evidence presented on the issue of Anthony's transfer establishes that Anthony was only transferred to ARF to complete mental health programming, and that once he completed the programming, he was transferred back to Marquette Branch Prison, which was a facility equipped to handle a prisoner of Anthony's security level.  Anthony presents no evidence that suggests his transfer from ARF to Marquette Branch Prison was because of the misconduct ticket issued by Salisbury.  For these reasons and for the reasons explained in the earlier report and recommendation, Salisbury is entitled to summary judgment on the retaliation claim.

### D.  Claim Against Forde

Anthony's final claim is against Forde.  He alleges that Forde refused to do a proper mental health evaluation before removing him from observation and suicide prevention and refused to provide him with acute mental health care.

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' "  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

13

The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment—one objective and one subjective.  "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]' " *Farmer*, 511 U.S. at 834 (citations omitted).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quotation marks and citations omitted).

Second, "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

> The subjective component requires a showing that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.  [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An express intent to inflict unnecessary pain is not required.  Rather, obduracy and wantonness are required to make a showing of deliberate indifference.  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Richmond*, 885 F.3d at 939 (internal quotation marks and citations omitted).

"[D]eliberate indifference [lays] somewhere between the poles of negligence at one end and purpose or knowledge at the other[.]" *Farmer*, 511 U.S. at 836.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a

14

substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976).

The record indicates that Forde spoke to Anthony and that soon after Anthony overdosed on Tylenol. Anthony alleges, without providing any supporting evidence, that Forde was aware of his conflict with Salisbury and, thus, should have anticipated his suicide attempt. Even assuming Forde knew about this conflict, her decision not to provide Anthony with additional mental health treatment does not rise to deliberate indifference. *See Jennings v. Al-Dabagh*, 275 F.Supp.2d 863, 870 (E.D. Mich. 2003) ("[T]he fact that a prisoner disagrees with a course of treatment that he was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation."). Furthermore, Anthony does not, for example, allege that he told Forde that he was suicidal, and that she disregarded such a statement. Accordingly, Anthony has not proven that Forde was deliberately indifferent, and Forde is, therefore, entitled to summary judgment on this claim.

III. Conclusion

15

For the reasons stated above, the undersigned RECOMMENDS that Forde and Salisbury's motion for summary judgment be GRANTED and the case be DISMISSED.

Dated: October 6, 2021                s/Kimberly G. Altman
Detroit, Michigan                     KIMBERLY G. ALTMAN
                                      United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

16

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.   If the court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on October 6, 2021.


s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager